**Robert B. ADAMS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 3098.**

United States District Court,
D. Montana,
Great Falls Division.

Sept. 10, 1974.

Dorothy A. Hatfield, Great Falls, Mont., for plaintiff.

Roger Olsen, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

OPINION AND ORDER

RUSSELL E. SMITH, Chief Judge.

The pretrial order in this case reads as follows:

"III

"CONTENTION OF THE PARTIES
"1. The plaintiff submits the only issue in this case is:

Whether portions of the salary paid to the plaintiff, in stock were unreasonable so that Adams & Gregoire,

Inc., was not entitled to a business deduction for the full amount of the salaries claimed within the meaning of Section 162 of the Internal Revenue Code of 1954.

"2. The defendant submits the issue before this Court, in addition to the one immediately stated by the plaintiff is as follows:

Whether the payment by plaintiff of taxes due and owing from Adams & Gregoire, Inc., personally qualifies him as a proper party to maintain this refund suit of corporate taxes.

## "IV

### "LAW PROBLEMS

"The defendant respectfully submits that the plaintiff is not the proper party to maintain this tax refund suit within the meaning of Section 7422(a) of Title 26 U.S.C. and Section 1346(a)(1) of Title 28 U.S.C. and hence has no standing to be entitled to recover these corporate taxes."

Adams and Gregoire ("Gregoire" meaning Gregoire and his wife) incorporated Adams & Gregoire, a corporation, and were equal shareholders. In 1960 the corporation paid Adams and J. J. Gregoire equal salaries. Payment was made in cash and stock at par value as compensation for services rendered during the year 1960. Adams & Gregoire, Inc. deducted the full amount of the compensation so paid in computing its 1960 income tax return. Adams and Gregoire individually reported the stock at full par value in their individual tax returns and paid the tax on it. In March 1962 Adams and Gregoire entered into an agreement under which Adams transferred all of his capital stock to Gregoire in exchange for certain property of the corporation and agreed that each would be responsible for his share of the deficiencies assessed against the corporation as a result of an audit then in progress. The Internal Revenue Service (I.R.S.) assessed a deficiency against the corporation for the years 1958, 1959, and 1960, based upon a determination that the corporation could not deduct the

value of the stock. At the same time I.R.S. determined that Plaintiff Adams had overstated his individual income for the years in question. Adams elected in writing to have the resulting individual tax credit applied to reduce the corporate tax. In March 1963 Gregoire and Adams determined the share of the corporate taxes for which each was responsible and Adams agreed that he would "hold and save Gregoires harmless from payment of Bob's (Adams') said share of said tax deficit and interest accrued thereon." Adams had not paid his share by June 25, 1963, and at that time the corporation was advised by I.R.S. that in the first part of July the tax would be assigned for collection. The tax had not been paid by October and at that time the I.R.S. was threatening to seize the assets of the corporation. In November 1963 Adams personally paid $5,246.00 to satisfy the deficiency assessed against Adams & Gregoire, Inc. At the time of the payment Adams was neither an officer, director, nor stockholder of Adams & Gregoire. The claim for refund was filed and this action is maintained by Adams to recover for himself and not for the corporation.

The jurisdiction of the court depends upon that portion of 28 U.S.C. § 1346(a)(1) reading:

(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected . . . or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws. . . .

The United States, while conceding that Adams did personally pay the tax, contends that he was not a taxpayer within the meaning of 28 U.S.C. § 1346(a)(1). While it is not specifically so stated, the real thrust of the argument is that the only persons entitled to sue under that section are those against whom the tax is assessed.

The rule, however, is as stated in McMahon v. United States, 172 F.Supp. 490, 494 (D.R.I.1959):

. . . The word "taxpayer" should not be deemed to include only a person against whom a tax has been assessed; on the contrary, it should be construed so as to include any person who in fact paid the tax, if such payment was not voluntarily made. In United States v. Updike, 1930, 281 U. S. 489, at page 494, 50 S.Ct. 367, at page 369, 74 L.Ed. 984, the Supreme Court said:

"Indeed, when used to connote payment of a tax, it puts no undue strain upon the word 'taxpayer' to bring within its meaning that person whose property, being impressed with a trust to that end, is subjected to the burden. Certainly it would be hard to convince such a person that he had not paid a tax."

*See* United States v. Updike, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984 (1930); Parsons v. Anglim, 143 F.2d 534 (9th Cir. 1944); Peavy-Wilson Lumber Co. v. Comm'r of Internal Revenue, 51 F.2d 163 (5th Cir. 1931).[1]

I find that Adams was not a volunteer. I.R.S. was threatening levies upon the corporation, and Adams had a contractual obligation to protect the property of the corporation from those levies.

In the year 1960 Adams and J. J. Gregoire were each paid a salary of $16,682.00, of which $6,440.00 was paid in corporate stock valued at par. The assessed deficiencies arose out of a determination by the agent that the salaries were unreasonable to the extent that they were paid in stock. The evidence shows that Adams (whose salary is in question here) worked 12 to 15 hours a day, seven days a week, in managing the corporation's trailer park, trailer sales, and trailer convoy business. He traveled some 40,000 miles per year by private aircraft which he piloted. Salesmen employed by the corporation earned salaries of $12,000.00 per year. I find that the salary of $16,682.00 was not unreasonable.

This opinion constitutes the findings of fact and conclusions of law of the court.

Pursuant to the stipulation of the parties, the court having found the submitted issues [2] against the defendant,

It is ordered that plaintiff have judgment against the defendant in the amount of Three Thousand Eight Hundred Sixty-Four Dollars ($3,864.00), together with interest.[3]

---

1. Although there may be a factual basis for distinguishing the cases of Phillips v. United States, 346 F.2d 999 (2d Cir. 1965), Ceravolo & Comis, Inc. v. United States, 266 F. Supp. 215 (N.D.N.Y.1967), and Jorrie v. Imperial Investment Co., 355 F.Supp. 1088 (W.D.Tex.1973) in that in none of those cases was it claimed that the tax was illegally assessed, I believe that they do express a view different from the one I have adopted. In each case the plaintiff's money was taken to pay a tax and in each case the plaintiff did not in fact owe the tax. The fault of the United States in each case was in the collection of the tax rather than assessment, but since 28 U.S.C. § 1346(a)(1) treats an illegal collection the same as an illegal assessment I think the effect of the holdings is that only the person against whom the tax is assessed may sue to recover under § 1346(a)(1).

2. There may be a substantial problem which is not fairly included within the issues submitted by the pretrial order nor argued in the briefs, and that is whether there was in fact any payment of salaries in excess of the cash. Before the issuance of the stock for salaries Adams owned one-half of the shares of the company of a total dollar · value of $X.00. After the issuance of the stock he still owned one-half of the corporate shares with a total dollar value of $X.00. In essence the salary transaction was, so far as appears here, a paper transaction with no economic significance.

A similar problem exists, and that is what was the value of the stock payment. Defendant asserts that there is *no proof* of the market value of the stock. I believe that is not submitted by the pretrial order.

3. A copy of this opinion as then proposed, omitting this footnote, was delivered to the parties and leave was given to the Government to file a motion to amend the pretrial order. No such motion was filed within the time allowed and the case is now decided on the basis of the issues submitted in the pretrial order.