542 F.2d 421
 76-2 USTC P 9676
 Edvige M. BUSSE, Plaintiff-Appellant,
v.
The UNITED STATES of America, Defendant-Third-Party Plaintiff-Appellee,
v.
Oscar A. BUSSE, Third-Party Defendant.
Edvige M. BUSSE, Plaintiff,
v.
The UNITED STATES of America, Defendant-Third-Party
Plaintiff-Appellant,
v.
Oscar A. BUSSE, Third-Party Defendant-Appellee.
 Nos. 75-2135, 75-2136.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 23, 1976.
Decided Sept. 27, 1976.
Rehearing Denied Oct. 27, 1976.
 
 Scott P. Crampton, Asst. Atty. Gen., Alfred S. Lombardi, Atty., Tax Div., Dept. of Justice, Washington, D.C., Samuel K. Skinner, U.S. Atty., Chicago, Ill., for U.S.
 Edward T. Joyce, Chicago, Ill., for Busse.
 Before CASTLE, Senior Circuit Judge, TONE, Circuit Judge, and GRANT, Senior District Judge.*
 TONE, Circuit Judge.
 
 
 1
 This tax refund action presents the issue of whether one who is not liable for a tax but pays it to remove a lien against his property may sue for a refund under 28 U.S.C. § 1346(a)(1). We answer in the negative, as did the District Court. On the other major issue in the case, we reverse a summary judgment and order a trial on the applicability of the "innocent spouse" provision of 26 U.S.C. § 6013(e).
 
 
 2
 Plaintiff and her husband were divorced on August 26, 1971, at which time the divorce court found that the couple's total assets had a value of approximately $400,000. About half this amount was cash the husband had obtained by secretly liquidating a corporation owned by the couple and by appropriating the contents of joint bank accounts and other assets. These funds were secreted by the husband and have never been found, despite the government's diligent efforts. The divorce court awarded plaintiff one-half the couple's assets, ordering the husband to convey $25,000 in cash and certain property, free of encumbrances. The husband was also ordered to "save the plaintiff harmless" from any income tax claims or liens.
 
 
 3
 Four months before the entry of the divorce decree, the Internal Revenue Service assessed deficiencies based on transferee liability against the husband for unpaid taxes owed by the corporation. $554.52 was assessed for 1967 and $3,780.22 for 1968. After entry of the decree, a deficiency of $19,511.04 was assessed against plaintiff and her husband jointly for the tax on the income realized by the husband in liquidating the business in 1968.[1] After the entry of the divorce decree, the government filed tax lien notices on the basis of these assessments.
 
 
 4
 Included in the property transferred to plaintiff under the divorce decree was the family house, title to which was encumbered by tax liens resulting from the assessments described above. She sold the house to raise cash and, in order to deliver a clear title, paid the taxes.
 
 
 5
 Besides failing to discharge the tax liens, plaintiff's husband had failed in other respects to comply with property settlement provisions of the divorce decree. Alleging claims against him totaling at least $88,000, she filed suit in a state court alleging that he had secretly transferred $60,000 to his sister. In settlement of this suit, plaintiff released all her claims against her husband and his sister, in return for $42,500. A consent decree incorporating these terms was entered.
 
 
 6
 After her claims for refund of the taxes she had paid were denied by the IRS, plaintiff filed this action. Jurisdiction was based on 28 U.S.C. § 1346(a)(1), which applies to
 
 
 7
 "(a)ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."
 
 
 8
 The government filed a third-party complaint against plaintiff's husband.
 
 
 9
 The District Court ruled that it lacked jurisdiction over the claim for refund of the transferee tax and granted summary judgment against plaintiff on the claim for refund of the 1968 joint tax. The government's third-party complaint was dismissed. We affirm the District Court on the jurisdictional question, but reverse the summary judgment on the 1968 joint tax and direct reinstatement of the third-party claim.
 
 I. The Transferee Tax
 
 10
 The assessment of the transferee tax is not challenged. The issue is whether plaintiff, who was not personally liable for the tax but paid it to remove an encumbrance from the title to her land, can sue for a refund of the payment. Both parties agree that only "the taxpayer" can bring a refund suit under 28 U.S.C. § 1346(a)(1), but they disagree over the meaning of that term.
 
 
 11
 There is some conflict in the authorities on the question of whether a refund suit can be filed by a person who pays a third party's taxes. The plaintiff's position is supported by United States v. Halton Tractor Co., 258 F.2d 612 (9th Cir. 1958), in which the plaintiff, who had a lien on goods owned by a third party, paid that third party's taxes to avoid a sale of the goods by the government, which he mistakenly believed to possess a superior lien. The court held that a refund suit under § 1346 was proper because the plaintiff had not made the payment as a donation for the benefit of the person who owed the tax. In an earlier case, the same court allowed a refund suit where the plaintiff paid another's taxes to avoid penalties that would have been assessed if, as she believed and the IRS asserted, she had been liable as a transferee. Parsons v. Anglim, 143 F.2d 534 (9th Cir. 1944). Two district courts have adopted the related test that a person may qualify as a "taxpayer" if the payment of the third party's taxes was not "voluntary." Adams v. United States, 380 F.Supp. 1033, 1035 (D.Mont.1974); McMahon v. United States, 172 F.Supp. 490, 494 (D.R.I.1959).
 
 
 12
 In the Parsons case, and apparently in Adams as well, the plaintiff seeking a refund paid the tax believing himself to be at least potentially liable for the taxes assessed. In the same situation, the Court of Claims has held that even such a plaintiff as this cannot sue for a refund because the definition of a "taxpayer" in § 1346(a)(1) is strictly limited to "the taxpayer who has overpaid his own taxes." Collins v. United States, 532 F.2d 1344, 1347 n.2 (Ct.Cl.1976).[2] We need not decide whether potential personal liability is a sufficient qualification for taxpayer status or whether, as the government argues, there must have been an actual assessment against the plaintiff. Plaintiff's only argument here is that, although she paid a tax for which she concededly was not liable, she paid it to release a lien against her property and is therefore entitled to bring a refund suit. We find this argument unpersuasive.
 
 
 13
 There are no cases precisely in point. It is clear, however, that a refund suit cannot be brought by a person who owns or has an interest in property that has been levied upon to satisfy the tax obligations of a third party. Phillips v. United States, 346 F.2d 999 (2d Cir. 1965); First National Bank of Emlenton v. United States, 265 F.2d 297 (3d Cir. 1959); Stuart v. Chinese Chamber of Commerce, 168 F.2d 709, 712 (9th Cir. 1948) (dicta); Mill Factors Corp. v. United States, 391 F.Supp. 387, 389 (S.D.N.Y. 1975); Economy Plumbing & Heating Co. v. United States, 470 F.2d 585, 589, 200 Ct.Cl. 31 (1972). The Halton Tractor Co. and McMahon cases, supra, which would seem to contradict this result, must be viewed in light of the failure of the Code prior to 1966 to provide a remedy for a third party whose property or interest in property was harmed by a wrongful government levy. The Senate Report on 26 U.S.C. § 7426, which remedied this deficiency, noted that some courts tried to cure the inequitable situation by allowing suits in such cases against IRS' district directors. Sen.Rep. No. 1708, 89th Cong., 2d Sess., 1966 U.S. Code Cong. & Adm. News at 3750. The courts in Halton Tractor Co. and McMahon were perhaps motivated by a similar concern.
 
 
 14
 Given that a person whose property has been wrongfully levied upon cannot maintain a refund action, it follows that plaintiff in this case should also be barred from maintaining such a suit. We see no reason for distinguishing between a person whose property is seized to satisfy another person's taxes and a person who pays the tax to eliminate the threat of seizure.
 
 
 15
 Because 28 U.S.C. § 1346(a)(1) is a waiver of sovereign immunity, it must be construed narrowly. Phillips v. United States, supra, 346 F.2d at 1000; Eighth Street Baptist Church, Inc. v. United States, 431 F.2d 1193 (10th Cir. 1970). As the court said in Phillips:
 
 
 16
 "Here, as in many cases, the answer to the question of statutory interpretation depends on the spirit in which it is approached. Unfortunately for the plaintiff, the spirit proper to judicial consideration of a waiver of sovereign immunity is not one of generosity and broad interpretation (Citation omitted.) Faced with what is at best an absence of any evidence as to intent to waive sovereign immunity with respect to suits by non-taxpayers, we think that § 1346(a)(1) should be interpreted as not extending to such suits."
 
 
 17
 Other remedies are available to contest a tax lien, including a suit to quiet title under 28 U.S.C. § 2410, and, as noted above, if the government attempts to enforce the lien by levy, an action challenging the wrongful levy under 26 U.S.C. § 7426. The owner of the property may also negotiate with the IRS to transfer the lien from the property to the proceeds of sale, so that a clear title can be conveyed. 26 U.S.C. § 6325(b)(3). We see no need to provide an additional remedy even if it were within our power to do so.
 
 
 18
 We conclude that the suit for refund of the transferee taxes could not be brought under 28 U.S.C. § 1346(a)(1).
 
 II. The 1968 Joint Tax
 
 19
 The largest item secured by the lien on plaintiff's home was the tax assessed against plaintiff and her former husband jointly for the unreported income her husband realized in liquidating the business in 1968. Because a joint return was filed for that year, plaintiff is jointly liable for the tax unless she can bring herself within the "innocent spouse" provision of the Code, 26 U.S.C. § 6013(e)(1). To qualify as an innocent spouse, she must show the following:"(A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return,
 
 
 20
 "(B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and
 
 
 21
 "(C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission."
 
 
 22
 The first condition is concededly met here. The second was not considered by the District Court, which granted summary judgment against plaintiff because it found that she had received a significant benefit from the omitted income. This benefit was said to accrue to plaintiff through both the property division awarded her in the divorce proceeding and the money received in her later settlement with her husband.
 
 
 23
 In support of this holding the government argues that the failure to pay taxes on the income realized from the liquidation of the jointly owned business increased the couple's joint net worth and thus increased the plaintiff's one-half share of that net worth, even if she never received any of the proceeds of the liquidation. This reasoning, however, is based on the questionable assumption that the divorce court's award constituted in fact an equal division of the couple's property. Although this was the court's goal, plaintiff's husband made a precise division impossible by secreting all the family's liquid assets including the proceeds of the liquidation. With only an estimated figure to work with, the divorce court found it "fair and equitable" to award plaintiff all the jointly held real property that her husband had been unable to conceal. We cannot presume that the division would have been significantly different had Mr. Busse paid the full 1968 tax and thereby reduced his hidden assets by the $15,000 then due.
 
 
 24
 The government also relies on the payment made to plaintiff in settlement of her claims against her husband, which payment, it says, also "represented a . . . substantial benefit." But these claims were based on the husband's failure to comply with the original award.[3] Inasmuch as the settlement was in lieu of part of the original award, it was no more a benefit derived from omitted income than was the original award.
 
 
 25
 The government also argues that by accepting a settlement in return for a release of the claim arising out of the tax lien, plaintiff lost her right to any refund from the government. This argument is based on the assumption that plaintiff received full payment of this claim from her husband, despite the fact that the claim was only one of several totaling at least twice the amount he paid her in settlement. The government asks us to presume that the tax claim was paid in full, absorbing $26,000 of the $42,500 settlement and leaving only $16,500 to settle the other claims, which totaled $62,000. There is no reason to conclude that the claims were settled so disproportionately. It is more reasonable to allocate the settlement to the various claims pro rata, which would leave plaintiff compensated only in part for the tax claim. The guilty spouse's payment of a part of the tax, either directly to the government or by way of reimbursement to the innocent spouse, does not preclude innocent-spouse relief as to the remainder of the tax.[4]
 
 
 26
 The government further contends that the high standard of living enjoyed by plaintiff during her marriage constituted a "significant benefit." The divorce court found that the husband "accustomed the plaintiff to live in a high style," having spent approximately $3000 per month on the operation of their home. The husband testified in the divorce proceeding that some of the secreted funds were used for this purpose, but the divorce court found that the husband's salary could have been the source of this money. Moreover, plaintiff and her husband had other substantial assets, including a savings account of over $51,000, and it appears that the plaintiff may have enjoyed this standard of living before her husband liquidated the business. We think there is a question of fact to be resolved concerning the source of the household funds.
 
 
 27
 Finally, even if the District Court had correctly found a significant benefit, innocent-spouse relief would still be available if it would nevertheless be inequitable to hold plaintiff liable for the tax. 26 U.S.C. § 6013(e)(1)(C); Sanders v. United States, 509 F.2d 162, 170, 171 n.6 (5th Cir. 1975); Dakil v. United States, 496 F.2d 431, 433 (10th Cir. 1974). The inequitability issue depends, in part at least, upon disputed facts relating to benefit. Any benefit found must be considered in the totality of the circumstances. The inequitability provision of the statute is a recognition that, in the words of the Tenth Circuit, "(e)ven a tax collector should have some heart." Dakil v. United States, supra, 496 F.2d at 433.
 
 III. The Depositions
 
 28
 One other point requires mention. Plaintiff's brief cites depositions of herself and her husband which were not filed in the District Court until after her notice of appeal was filed. The government maintains that these depositions are not properly before us, but asks us to consider certain portions favorable to the government if we decide that the depositions are part of the record.[5] These depositions cannot be considered on appeal, because they were not before the District Court at the time of its ruling. Union Asbestos & Rubber Co. v. Evans Products Co., 328 F.2d 949, 950 n.4 (7th Cir. 1964); Dictograph Products Co. v. Sonotone Corp., 231 F.2d 867 (2d Cir.), cert. dismissed, 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1956); Jaconski v. Avisun Corp., 359 F.2d 931, 936 n.11 (3d Cir. 1966).
 
 
 29
 Because material issues of fact remain to be tried, the summary judgment against plaintiff must be reversed and the case remanded. As we noted earlier, the government filed a third-party complaint against plaintiff's husband and took a protective appeal from its dismissal. The judgment against the government on its third-party complaint is reversed insofar as it relates to the claim for the 1968 joint taxes.
 
 
 30
 Affirmed in part; reversed in part.
 
 
 
 *
 The Honorable Robert A. Grant, Senior District Judge of the Northern District of Indiana, is sitting by designation
 
 
 [1]
 There was also an assessment against the husband for 1969 taxes owed because he improperly claimed the joint rate on his return. Plaintiff later paid this tax and filed a refund claim. The District Court granted summary judgment against her. Plaintiff now concedes that she did not sign the 1969 return and that the same considerations apply to this claim as to the claim for refund of the transferee tax. We hold infra that the District Court lacked jurisdiction over the latter claim; this claim is subject to the same holding. Even if plaintiff had signed the return, she could not rely on the "innocent spouse" provision of 26 U.S.C. § 6013(e)(1) because the omission from the return on which the deficiency is based does not exceed 25 per cent of the gross income stated in the return. See Part II, infra
 
 
 [2]
 The Court of Claims does, however, entertain suits under 28 U.S.C. § 1491 to recover taxes paid under duress on the theory that there is an implied-in-fact contract to repay the money. This theory has been rejected in Phillips v. United States, 346 F.2d 999, 1000 (2d Cir. 1965), and First Nat'l Bank of Emlenton v. United States, 265 F.2d 297, 300 (3d Cir. 1959). Moreover, it is not clear that plaintiff could satisfy the stringent definition of duress applied in the Collins case. We need not, however, pursue this question, because plaintiff has never argued the contract theory
 
 
 [3]
 The 1968 joint tax lien may be an exception, depending on when the property was transferred. The tax on the 1968 joint income was not assessed until after the divorce, so no lien arose until then, see 26 U.S.C. § 6322. If the property was transferred before the assessment, the husband's duty to pay the tax arose, not from the section of the decree awarding the property to plaintiff free of encumbrances, but rather from the section requiring him to "save plaintiff harmless" from tax liens and claims. Either way, the use of this item to prove a "significant benefit" to plaintiff is circular because she could not have benefited in any way by her husband's reimbursement of the tax she paid unless she had been personally liable for the tax in the first place
 
 
 [4]
 The government's other theories regarding the settlement have even less merit than the ones discussed in the text. The first is that the government and plaintiff's husband were joint obligors and that the consent decree against the husband released the government. There was no joint obligation, however, for the husband's obligation derived from the divorce decree while the government's derived from an entirely different source. To the extent that this theory is based on unjust enrichment, as the government suggests, the answer is that plaintiff would not be unjustly enriched if she recovered from the government the balance of the tax left uncompensated by the settlement. The government's other theory apparently is that it is the third-party beneficiary of an undertaking by plaintiff to pay her husband's taxes. Such an undertaking, if it existed at all, presumably did not extend beyond the sum she received from her husband for the tax claims
 
 
 [5]
 The depositions contain an admission by plaintiff that her husband had said to her, sometime in the 1950's or early 1960's, "If the Internal Revenue only knew how much I am getting away with." Plaintiff also admitted seeing a 1040 Form, some years prior to 1968, on which the stated income was little more than the sum spent for household expenses. She said, however, that she did not believe that her husband actually intended to file that document
 The government contends that these admissions prove that plaintiff knew or should have known (§ 6013(e)(1)(B)) of the sums omitted from income in 1968. The admissions may adversely affect any claim by plaintiff that she did not read the 1968 return or that she left its preparation to her husband. But the plaintiff could not have known that her husband had realized income if she did not know that he had sold the assets of the business. The government has not contended that as a matter of law she should have known this. The complaint alleges that the money was "secretly withdrawn . . . from this business venture and hidden from plaintiff." There would seem to be questions of fact relating to plaintiff's duty to investigate her husband's business dealings and whether any investigation the law requires would have been sufficient to reveal the liquidation of the business.