**WASHINGTON STATE DAIRY PRODUCTS COMMISSION, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 81–3170.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 9, 1982.

Decided Aug. 24, 1982.

Kathleen D. Spong, Asst. Atty. Gen., Olympia, Wash., for plaintiff-appellant.

David Pincus, Washington, D. C., for defendant-appellee.

Before HUG, SKOPIL and FLETCHER, Circuit Judges.

SKOPIL, Circuit Judge:

## INTRODUCTION

The Internal Revenue Service ("IRS") assessed the Washington State Dairy Products Commission ("the Dairy Commission") roughly $700 in telephone excise tax for 1972–74. The Dairy Commission contended that it was exempt from the tax and refused to pay. The IRS collected the tax, interest, and penalties from the Dairy Commission's bank. After the IRS denied its refund claim, the Dairy Commission sued. The district court held that the Dairy Commission was not exempt from the tax and entered summary judgment for the IRS. The Dairy Commission appeals. We affirm.

## FACTS

The Dairy Commission was created to "stabilize the dairy industry by increasing consumption of dairy products within the state and nation." Wash.Rev.Code § 15.-44.900(1). The state's licensed dairy producers elect seven of the Dairy Commission's ten members. The State Director of Agriculture is a non-voting member who appoints two voting members. Wash.Rev. Code §§ 15.44.020. Six members constitute a quorum. Wash.Rev.Code § 15.44.038. The Dairy Commission is financed by assessments on dairy producers, which it may raise, subject to approval by a producer referendum. Wash.Rev.Code § 15.44.080. The producer assessments are collected like taxes. Wash.Rev.Code § 15.44.090. The state is not liable for the Dairy Commission's contracts or other expenses. Wash. Rev.Code § 15.44.150. The Dairy Commission's employees are treated like state employees.

During the years at issue, the Code has taxed telephone expenditures. I.R.C. § 4251(a). The Code also provided: "Under regulations prescribed by the Secretary or his delegate, no tax shall be imposed under section 4251 upon any payment received for services or facilities furnished to the Government of any State ... or any politi-

cal subdivision of the foregoing...."
I.R.C. § 4292 (current version at I.R.C.
§ 4253(i)). The Dairy Commission contends
that it falls within the statutory exemption.
It argues alternatively that denying it the
benefit of the statutory exemption would
be unconstitutional.

## ISSUES

1. Did I.R.C. § 4292 exempt the Dairy
   Commission from the telephone excise
   tax?
2. Do constitutional principles of intergo-
   vernmental tax immunity require that
   the Dairy Commission be exempt from
   the telephone excise tax?

## DISCUSSION

I. Standard of Review.

The district court correctly held that no
genuine issue of material fact exists. We
review the district court's legal conclusions
*de novo*. *First Charter Financial Corp. v.
United States*, 669 F.2d 1342, 1345 (9th Cir.
1982).

II. Exemption Under Section 4292.

The Dairy Commission contends first that
its entitlement to exemption under section
4292 is resolved by *Hunt v. Washington
State Apple Advertising Commission*, 432
U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383
(1977). The Dairy Commission also argues
that its characteristics qualify it for exemp-
tion under the statute and the IRS' Reve-
nue Rulings. The Dairy Commission argues
that the Code should be construed to ex-
empt it in order to avoid difficult constitu-
tional questions of intergovernmental tax
immunity. The IRS disputes, and the dis-
trict court rejected, these contentions.

In *Hunt* the Court held that the Wash-
ington State Apple Advertising Commission
("the Apple Commission") had standing to
sue for injuries to Washington apple grow-
ers. The Court stated:

> "The Commission, while admittedly a
> state agency, for all practical purposes
> performs the functions of a traditional
> trade association representing the Wash-

ington apple industry.... [I]ts purpose
is the protection and promotion of the
Washington apple industry.... It thus
serves a specialized segment of the
State's economic community which is the
primary beneficiary of its activities...."

*Hunt v. Washington State Apple Advertis-
ing Commission*, 432 U.S. at 344, 97 S.Ct. at
2442.

In *Hunt* the Court did not decide whether
the Apple Commission was a "state agency"
for purposes of the telephone excise tax
exemption. Although the Court called the
Apple Commission a "state agency", it actu-
ally held .that the Apple Commission was
more like a trade association than a state
agency. *Id.* at 345, 97 S.Ct. at 2442.

■ As the Dairy Commission recognizes,
the reason for the excise tax exemption is
respect for state sovereignty. Thus, only
entities possessing at least some portion of
the state's sovereign powers or performing
traditional government functions qualify
for the exemption. The entity's practical
status is controlling. Whether the entity
has a state charter or is called a state
agency is not. The Court's language in
*Hunt* therefore does not resolve this case.
Indeed, the Court's conclusion that the Ap-
ple Commission, which the Dairy Commis-
sion contends is identical in status and func-
tion, is more like a trade association than a
true state agency tends to support a conclu-
sion that the Dairy Commission does not
qualify for the exemption.

■ The Dairy Commission argues that it
is entitled to an exemption under the stat-
ute as interpreted in a series of Revenue
Rulings. Revenue Rulings, as opposed to
regulations or Treasury Decisions, do not
have the force of law. *Dixon v. United
States*, 381 U.S. 68, 73, 85 S.Ct. 1301, 1304,
14 L.Ed.2d 223 (1965); *Ricards v. United
States*, 683 F.2d 1219, 1224 n.12 (9th Cir.
1981). Thus, an erroneous Revenue Ruling
"cannot in and of itself bar the United
States from collecting a tax otherwise law-
fully due." *Dixon v. United States*, 381
U.S. at 73, 85 S.Ct. at 1304. *See Ahmanson
Foundation v. United States*, 674 F.2d 761,

774 (9th Cir. 1981). Revenue Rulings may be helpful in interpreting the law by indicating the trend of opinion among administrators experienced with the tax laws. *See Ricards v. United States*, 683 F.2d at 1224 n.12; *St. Louis Bank for Cooperatives v. United States*, 624 F.2d 1041, 1050 (Ct.Cl. 1980).

█ Revenue Rulings interpreting the telephone excise tax exemption do not support the Dairy Commission's position. Although the Rulings have interpreted the exemption somewhat broadly, they have limited the exemption to entities which either possessed some of the state's sovereign powers or performed a traditional governmental function.

The IRS has granted exemptions to entities authorized to use a state's sovereign powers, such as the power of eminent domain. Thus, a state off-track betting corporation possessing eminent domain powers, as well as police powers regarding gambling and which was governed by a publicly-appointed board of directors was held exempt. Rev.Rul. 78–138, 1978–1 C.B. 314. A public transit authority which exercised powers of eminent domain as well as rate-making was held exempt. Rev.Rul. 79–95, 1979–1 C.B. 331. Irrigation districts exercising eminent domain powers, as well as authority to make assessments on landowners within the district and subject to public control were granted exemptions. Rev.Rul. 76–549, 1976–2 C.B. 330.

Other entities have been granted exemptions because they performed traditional governmental functions. Thus, the IRS has exempted a non-profit volunteer ambulance association providing the only emergency services in its area, Rev.Rul. 77–388, 1977–2 C.B. 388, an anti-poverty organization which received federal funding, Rev.Rul. 68–274, 1968–1 C.B. 449, and an intercollegiate athletic association which functioned as part of a state educational system, Rev.Rul. 58–492, 1958–2 C.B. 814.

The Dairy Commission does not possess the sovereign powers which some of the exempted entities had. Neither does it perform a traditional governmental function,

as the others did. Instead, it functions as a trade association, serving "the dairy industry by increasing consumption of dairy products within the state and nation." Wash.Rev.Code § 15.44.900. *Compare National League of Cities v. Usery*, 426 U.S. 833, 851, 96 S.Ct. 2465, 2474, 49 L.Ed.2d 245 (1976) (citing such areas as fire prevention, police protection, sanitation, public health, and parks and recreation as functions which governments are created to provide and which the states have traditionally afforded their citizens).

The Dairy Commission also contends that the statute itself suggests that it should be granted an exemption. It notes that other Code sections grant an exemption only if goods or services were "purchased for the exclusive use" of a government entity. *See* I.R.C. §§ 4221(a)(4), 4293. The telephone excise tax exemption does not contain the "exclusive use" clause.

We have found no legislative history interpreting the "exclusive use" clause. We cannot conclude from its absence from the telephone excise tax exemption that Congress intended to grant an exemption to all entities related to a state. The absence of the "exclusive use" clause may have been intended to permit the IRS to grant exemptions to entities exercising some of a state's sovereign power but serving a special community, or which perform a traditional governmental function, as the IRS has in fact done.

III. Intergovernmental Tax Immunity.

The Dairy Commission argues that denying it the telephone excise tax exemption would at least raise serious constitutional questions regarding intergovernmental tax immunity. It contends that this court should either construe the Code to provide an exemption, or require that an exemption be granted on constitutional grounds.

█ Where a statute is attacked on constitutional grounds, courts must " 'first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.' " *Loril-*

lard v. Pons, 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978) (quoting *United States v. Thirty-seven Photographs*, 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed.2d 822 (1971)). *See also NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 501, 99 S.Ct. 1313, 1319, 59 L.Ed.2d 533 (1979); *EEOC v. Pacific Press Publishing Ass'n*, 676 F.2d 1272 at 1275 (9th Cir. 1982). Where the statute's meaning and intent are clear, courts should not engage in a saving construction. *See City of Rome v. United States*, 446 U.S. 156, 173, 100 S.Ct. 1548, 1560, 64 L.Ed.2d 119 (1980).

■ The existence of the states implies some limit on the national taxing power. *Massachusetts v. United States*, 435 U.S. 444, 454–55, 98 S.Ct. 1153, 1160–61, 55 L.Ed.2d 403 (1978) (plurality opinion). Thus, the states possess limited immunity from federal taxes which would cause "undue interference with their traditional governmental functions." *Id.* at 459, 98 S.Ct. at 1163. Interference with a traditional governmental function must be actual and substantial for the federal tax to be invalid. *United States v. Washington Toll Bridge Authority*, 307 F.2d 330, 334 (9th Cir. 1962) (en banc), *cert. denied*, 372 U.S. 911, 83 S.Ct. 724, 9 L.Ed.2d 71 (1963).

It is unclear whether the federal government's power to tax is greater than its powers under the Commerce Clause. *Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 287 n.28, 101 S.Ct. 2352, 2365 n.28, 69 L.Ed.2d 1 (1981). Yet even under the Commerce Clause, a federal regulation is only invalid if it regulates the states as states, addresses "matters that are indisputably 'attributes of state sovereignty'", if compliance with a regulation would "directly impair [the states'] ability 'to structure integral operations in areas of traditional functions'", and if the states' interest in being free from the regulation outweighs the federal government's interest in imposing it. *Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. at 288 & n.29, 101 S.Ct. at 2366 & n.29 (quoting *National League of Cities v. Usery*, 426 U.S. at 845, 852, 96 S.Ct. at 2474).

■ We hold that denying the Dairy Commission a telephone excise tax exemption does not cause sufficiently serious interference with the state's functions to warrant either a saving construction of the statute or a conclusion that the tax is constitutionally invalid as applied to the Dairy Commission. As noted above, the Dairy Commission does not possess any significant portion of the state's sovereign powers. It functions as a trade association. It does not perform traditional governmental functions. Accordingly, imposing the telephone excise tax on the Dairy Commission will not impair the state's ability to deliver traditional governmental services.

## CONCLUSION

The Code does not grant a telephone excise tax exemption to state-chartered entities, such as the Dairy Commission, which do not exercise significant sovereign powers or perform traditional governmental functions. Since the Dairy Commission does not possess such powers or perform such functions, imposing the telephone excise tax on it does not raise sufficiently serious constitutional questions to warrant either a saving construction of the Code or a conclusion that imposition of the tax is unconstitutional. Accordingly, the judgment appealed from is AFFIRMED.