The CONFEDERATED TRIBES OF the WARM SPRINGS RESERVATION OF OREGON, Plaintiff-Appellant,

v.

Jerome KURTZ, Commissioner of the Internal Revenue Service, and the United States of America, Defendants-Appellees.

No. 81–3503.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 2, 1982.

Decided Oct. 29, 1982.

Robert L. Nash, Johnson, Marceau, Karnopp & Petersen, Bend, Or., for plaintiff-appellant.

William P. Wang, Washington, D. C., argued, Wynette J. Hewett, Washington, D. C., on brief, for defendants-appellees.

Before SNEED, and SKOPIL, Circuit Judges, and COUGHENOUR *, District Judge.

* Honorable John C. Coughenour, United States District Judge for the Western District of

SNEED, Circuit Judge:

■ The taxpayer, the Confederated Tribes of Warm Springs Reservation (the Tribe), instituted this action to recover federal excise taxes paid in connection with the operation of a tribal sawmill. The United States cross-claimed for additional excise taxes assessed but not paid. Motions for judgment on the pleadings and summary judgment followed. There exists no dispute with respect to the facts. The only issue is whether the Tribe is exempt from the federal excise taxes involved here. The district court held that the Tribe is not exempt and entered judgment for the defendants and the United States on its cross-claim. We affirm.

## I.

### FACTS

The taxpayer is a confederation of Indian tribes which occupies the Warm Springs Indian Reservation in central Oregon. Timber located on the reservation is the Tribe's principal resource and principal source of revenue. Since 1967 the Tribe has owned and operated a sawmill to process and market reservation timber. The sawmill, located on the reservation, operates under the management of the Tribal Council and the Bureau of Indian Affairs.

Four separate federal excise taxes are at issue here: (1) a tax on the use of certain highway motor vehicles, 26 U.S.C. § 4481(a); (2) a tax on diesel fuel used in highway vehicles, 26 U.S.C. § 4041(a); (3) a tax on special fuels used in motor vehicles, 26 U.S.C. § 4041(b); and (4) a tax on manufacturing, in this case a truck chassis assembled by the Tribe, 26 U.S.C. §§ 4061(a), 4218(a). From April 1975 to June 1978, the Tribe timely paid all taxes due on its use of highway motor vehicles. In May of 1978, however, the Tribe filed for a refund, claiming an exemption from federal excise taxes.

Washington, sitting by designation.

The Tribe's refund claim was disallowed and the Internal Revenue Service assessed additional excise taxes payable on the use of fuels and on the assembly of the truck chassis.

The Tribe does not deny that in its sawmill operations it has used the fuel and engaged in the activities with respect to which were assessed the disputed taxes. Rather, the Tribe asserts it is exempt under provisions of the Internal Revenue Code of 1954 (the Code) that exempt states and political subdivisions of states from liability for the excise taxes involved here. *See* 26 U.S.C. §§ 4041(g)(2), 4221(a)(4), 4483(a). The Tribe argues alternatively that other federal statutes, as well as the Tribe's treaty with the United States, impliedly exempt it from these federal excise taxes.

## II.

### THE CODE PROVIDES NO EXEMPTION

Inasmuch as there is no dispute regarding the facts, our review of the district court's legal conclusions is *de novo. First Charter Financial Corp. v. United States,* 669 F.2d 1342, 1345 (9th Cir. 1982).

The Code exempts from liability for federal excise taxes "any State, any political subdivision of a State, or the District of Columbia." 26 U.S.C. § 4041(g)(2); *see* 26 U.S.C. §§ 4221(a)(4), (d)(4), 4482(c)(1), 4483(a). The Code and regulations pursuant thereto are silent with respect to Indian tribes. Nonetheless, the Tribe claims to fall within the exemption afforded state governments on the theory that the Tribe is recognized as a governmental entity by the United States.

And so it is in many respects. For example, it has been said that Indian tribes " 'are unique aggregations possessing attributes of sovereignty over both their members and their territory.' " *Merrion v. Jicarilla Apache Tribe,* 455 U.S. 130, 102 S.Ct. 894,

903, 71 L.Ed.2d 21 (1982) (quoting *United States v. Mazurie,* 419 U.S. 544, 557, 95 S.Ct. 710, 717, 42 L.Ed.2d 706 (1975)). Unlike state governments, however, "[t]he right of tribal self-government is ultimately dependent on and subject to the broad power of Congress." *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 143, 100 S.Ct. 2578, 2583, 65 L.Ed.2d 665 (1980). This distinguishes Tribes from States. Tribal governments, while possessing aspects of self-rule, thus are quite distinct from the several states. *Id.* So in many respects is the District of Columbia. Congress, however, expressly exempted the District of Columbia from federal excise taxes. No similar exemption of Indian tribes exists. It follows that the state government exemption is not applicable to the Tribe merely because it is recognized as a governmental entity with the limited powers of a quasi-sovereign. A specific exemption remains necessary.

Also the Tribe is not a political subdivision of the State of Oregon; it derives no authority from the state. State authority with respect to reservation Indians is limited both by the Tribe's right of self-government and the preemptive effect of federal law. *White Mountain Apache Tribe v. Bracker,* 448 U.S. at 142, 100 S.Ct. at 2583. The state and the Tribe each functions within its proper sphere. Neither is a creature of the other. Only entities possessing at least some portion of the state's sovereign powers, or performing some portion of the state's traditional government functions, qualify for the federal excise tax exemption as political subdivisions of states. *Washington State Dairy Products Commission v. United States,* 685 F.2d 298, 300 (9th Cir. 1982).

■ Lacking an express exemption under the Code, the Tribe would have us find an ambiguity in the pertinent provisions of the Code merely because of its silence as to the taxability of tribal governments.[1] It is true

---

**1.** As authority the Tribe cites a NLRB decision ruling that tribal governments are governmental entities and therefore are implicitly exempt from regulation under the Labor Management

Relations Act because the Act exempts other types of governmental employers. *Fort Apache Timber Co.,* 226 N.L.R.B. No. 63 (1976). The Board's ruling, however, is inapposite to

that ambiguous statutes and treaties are to be construed in favor of Indians, and this canon of statutory construction applies to tax exemptions. *Choate v. Trapp,* 224 U.S. 665, 675, 32 S.Ct. 565, 569, 56 L.Ed. 941 (1912); *United States v. Anderson,* 625 F.2d 910, 913 (9th Cir. 1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1367, 67 L.Ed.2d 347 (1981). But "wishing" an ambiguity does not make. Courts are not free to create ambiguities in order to serve the interests of Indians. *Fry v. United States,* 557 F.2d 646, 649 (9th Cir. 1977), *cert. denied,* 434 U.S. 1011, 98 S.Ct. 722, 54 L.Ed.2d 754 (1978).

■ Moreover, there are other interpretive maxims to which we must give weight. For example, absent clear statutory guidance, the court will not imply tax exemptions. *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 156, 93 S.Ct. 1267, 1274, 35 L.Ed.2d 144 (1973); *United States v. Anderson,* 625 F.2d at 916–17; *Fry v. United States,* 557 F.2d at 649. And also " '[t]he intent to exclude must be definitely expressed where, as here, the general language of the Act laying the tax is broad enough to include the subject matter.' " *United States v. Anderson,* 625 F.2d at 913 (quoting *Choteau v. Burnet,* 283 U.S. 691, 696, 51 S.Ct. 598, 601, 75 L.Ed. 1353 (1931)).

■ We conclude that the Code and Treasury regulations pursuant thereto unambiguously restrict the benefit of the disputed exemption to states, political subdivisions of states, and the District of Columbia. The Tribe cites no legislative history to show that Congress intended other than the Code's plain meaning. Significantly, the Internal Revenue Service has ruled in three separate contexts that tribal governments are not treated as states for purposes of the Code: Gifts to tribal governments are not deductible as charitable contributions, Rev.Rul. 74–179, 1974–1 C.B. 279; interest on bonds issued by tribal governments is not tax exempt, Rev.Rul. 68–231, 1968–1 C.B. 48; and, for the issue presented here, tribal governments are not exempt from excise taxes, Rev.Rul. 58–610, 1958–2 C.B. 815.[2] Moreover, both the House of Representatives and the Senate presently are considering bills that would expressly afford tribal governments the same treatment under specified tax laws as that afforded to states. S. 1298, 97th Cong., 1st Sess. (1981); H.R. 3760, 97th Cong., 1st Sess. (1981). These bills would provide tribal governments an express exemption from excise taxes. We are not prepared to assume that Congress is engaged in unnecessary work and, of course, it is not within our authority to relieve Congress of its burden.

### III.

### NO IMPLIED EXEMPTION

■ The Tribe correctly points out that our inquiry is not limited simply to a determination of whether or not there is an exemption within the Code. Federal statutes and treaties dealing in particular with Indians have a direct bearing on Indian tax questions. *Squire v. Capoeman,* 351 U.S. 1, 5–6, 76 S.Ct. 611, 614–15, 100 L.Ed. 883 (1956); *accord United States v. Anderson,* 625 F.2d at 913. This court will imply a tax exemption from a statute or treaty that contains "express exemptive language." *United States v. Anderson,* 625 F.2d at 913; *see, e.g., Squire v. Capoeman,* 351 U.S. 1, 76

---

the issue before us. Classifications made under the labor laws are not controlling in tax cases. *Paseiro v. Commissioner,* 46 T.C.M. (P–H) ¶ 77,359 (1977). Moreover, the Board explicitly declined to hold that the Tribal Council was the equivalent of a state. Rather, it merely ruled that the Tribe had sufficient governmental attributes to qualify under the Act's broad government exemption provision, a provision more inclusive than the excise tax exemptions before this court.

**2.** Revenue rulings, as opposed to regulations or Treasury Decisions, do not have the force of law. *Washington State Dairy Prods. Comm'n v. United States,* 685 F.2d 298, 300 (9th Cir. 1982). They may, however, be helpful in interpreting the law by indicating the trend of opinion among administrators experienced with the tax laws. *Id.; see Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Ricards v. United States,* 652 F.2d 897, 902 n.12 (9th Cir. 1981).

S.Ct. 611, 100 L.Ed. 883 (1956) (construing sections 5 and 6 of The General Allotment Act of 1887 to create an express tax exemption for an Indian deriving income directly from his own trust allotment).

### A. Tribe's Treaty with the United States.

■ The Tribe's treaty with the United States, however, is silent on the issue of federal taxation. Treaty of June 25, 1855, 12 Stat. 963. The Tribe urges us to find an exemption within the treaty's silence. We cannot accede. Absent a "definitely expressed exemption," Indian tribes and their members are subject to federal taxation. *Mescalero Apache Tribe v. Jones,* 411 U.S. at 155, 93 S.Ct. at 1274. Silence alone does not create in favor of the Tribe an implied immunity from federal excise taxes.

### B. Pervasive Federal Regulatory Scheme for Tribal Resources.

Turning to the federal regulatory scheme we acknowledge that the federal government's regulation of tribal timber resources is comprehensive. Timber on reservation land is owned by the United States for the benefit of the Tribe. *See United States v. Mitchell,* 445 U.S. 535, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). Timber may be sold only with the Secretary's consent, and proceeds from any such sale, less administrative expenses incurred by the federal government, are to be used for the benefit of the Indians or transferred to the Indian owner. 25 U.S.C. §§ 406–407. This regulation reflects a federal policy to manage the land resources of Indian reservations for the optimum economic benefit of the Indians. *United States v. Anderson,* 625 F.2d at 917.

In *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980), the Supreme Court held that the pervasive federal regulatory scheme over tribal timber operations precluded the assessment of *state* excise taxes against two non-Indian logging companies solely operating on the Tribe's reservation. The Court identified a variety of ways in which the "state taxes would obstruct federal policies." *Id.* at 148–50, 100 S.Ct. at 2586–87. Federal law preempted Arizona's tax because the interests inherent in the federal government's comprehensive plan for the management of Indian lands and resources outweighed the state's interest in raising revenue. *Id.* at 150, 100 S.Ct. at 2587.

The Tribe contends that the federal taxes at issue here suffer the same infirmities that were fatal to Arizona's tax in *White Mountain.* Indeed, federal and state excise taxes could impose similar economic burdens on tribal forestry operations. But, as the Tribes admit, *White Mountain* is not controlling precedent in the case before us. The Supreme Court's preemption analysis did not require an "express congressional statement" that the state tax was preempted. *Id.* at 151, 100 S.Ct. at 2587–88. In contrast, to imply an exemption from federal taxes in this case we must find "express exemptive language" in a statute or treaty. This is a wise requirement. To insist on such language reduces the risk of courts concluding that the left hand of the federal government is preventing the right from doing its job when in fact both are doing exactly what they should.

As evidence of "express exemptive language" the Tribe cites 25 U.S.C. § 413, and regulations promulgated pursuant thereto. This section authorizes the Secretary "to collect reasonable fees to cover the cost of any and all work performed for Indian tribes." 25 U.S.C. § 413. The Secretary's regulations do not provide for federal excise taxes and the Tribe reasons that liability for excise taxes constitutes a charge not authorized by those regulations. This contention is without merit. Excise taxes are not charges for services. And section 413 is not a delegation by Congress to the Department of the Interior of authority to tax Indian tribes. The lack of specific reference to excise taxes in the Secretary's regulations does not constitute "express exemptive language."

The government's supervisory role in tribal timber operations evidences a federal

policy in favor of efficient land use on Indian reservations. The Tribe argues that federal excise taxes on its sawmill operations obstruct this federal policy. But we have repeatedly held that such a policy alone does not create a federal tax exemption.

> [I]t is one thing to say that courts should construe treaties and statutes dealing with Indians liberally, and quite another to say that, based on those same policy considerations which prompted the canon of liberal construction, courts themselves are free to create favorable rules.

*Fry v. United States,* 557 F.2d at 649. We deal here with an explicit federal Indian policy and an explicit federal tax statute that does not exempt the taxpayer. The Tribe must address its prayer for relief to Congress, not the courts.

AFFIRMED.