**LAC COURTE OREILLES BAND OF LAKE SUPERIOR CHIPPEWA INDIANS, Plaintiff,**

v.

**UNITED STATES INTERNAL REVENUE SERVICE, Defendant.**

**No. 86–C–272–C.**

United States District Court, W.D. Wisconsin.

April 28, 1987.

Larry B. Leventhal, Minneapolis, Minn., for plaintiff.

Thomas D. Sykes, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

CRABB, Chief Judge.

This is a civil action for a refund of federal excise taxes levied on the purchase of three trucks by the LCO Development Corporation, a corporation chartered by plaintiff Lac Courte Oreilles Band of Lake Superior Chippewa Indians. Defendant Internal Revenue Service has moved to dismiss the action for lack of subject matter jurisdiction, predicating its argument on the allegation that plaintiff was not the taxpayer and consequently has no standing to bring a tax refund suit. Plaintiff counters that although it was not the nominal taxpayer, the economic burden of the tax fell upon the tribe and therefore it has standing to bring a taxpayer action.

■ On a motion to dismiss for lack of subject matter jurisdiction, Rule 12(b)(1), Federal Rules of Civil Procedure, the allegations of the complaint are to be taken as true. *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1332 (7th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). In addition, the district court may supplement the allegations of the complaint by gathering from the record those facts necessary to determine subject matter jurisdiction. *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Christison v. Groen*, 740 F.2d 593, 597 n. 4 (7th Cir.1984).

Taking the allegations of the complaint as true, and supplementing those allegations with the affidavits and depositions submitted by the parties, I make the following findings of fact for purposes of this motion only.

### FACTS

Plaintiff Lac Courte Oreilles Band of Lake Superior Chippewa Indians (LCO) is a federally recognized Indian tribe with a tribal government organized pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. § 461 *et seq.* Defendant Internal Revenue Services (IRS) is a branch of the United States Treasury Department.

LCO exercises powers of self-government, including the development of housing and business on the Lac Court Oreilles Reservation. To facilitate its construction and development programs, LCO incorporated and chartered under its Tribal Code the LCO Development Corporation as an instrument of tribal government. A tribally chartered corporation enjoys the same tax status as the tribe when the corporation is used as an instrumentality of tribal government.

In March 1981, LCO applied on its own behalf and on behalf of the LCO Development Corporation for tax exempt status, using a form entitled "Registration for Tax-Free Transactions under Chapter 32 of the Internal Revenue Code." The tribe applied specifically for an exemption from the Federal Manufacturer's Excise Tax, 26 U.S.C. § 4061(a)(1). The IRS did not respond to the application.

In February, May and October 1981, the LCO Development Corporation purchased three large earth moving trucks. The trucks were purchased and used on the reservation for essential tribal governmental services of improving, maintaining and repairing the buildings and grounds of existing plants and projects. The vendor of the trucks was Gunderson Chevrolet of Osseo, Wisconsin. The purchase price of each truck was negotiated prior to delivery, and Gunderson was paid at the time of delivery. The amount paid for each truck upon delivery did not include the federal manufacturer's excise tax because it was LCO's position that it was exempt from that tax. The federal excise tax on the three vehicles amounted to $14,334.56.

By letter dated August 17, 1982, Gunderson demanded that LCO pay an additional amount for the three trucks of $14,334.56. On November 18, 1982, the LCO governing board authorized a loan to Gunderson in that amount. The tribe and Gunderson agreed that if LCO were found to be exempt from the tax, Gunderson would repay the loan. If the tribe were found to be not exempt, Gunderson would repay the loan, but within five days the tribe would pay Gunderson the full amount of $14,334.56. The loan has not been repaid.

At some unspecified time before the tribal loan to Gunderson, Gunderson paid the

tax to the IRS. LCO has not paid any amount directly to the IRS in connection with the federal excise taxes on the three trucks, and LCO has not filed any tax return with the IRS in connection with those taxes.

On or about October 26, 1982, LCO submitted to the IRS a memorandum in support of its March 1981 application for tax-free status under chapter 32 of the Internal Revenue Code. By letter dated December 17, 1982, the IRS denied the tribe's application. The IRS premised its denial on "the fact that there are no provisions in the Internal Revenue Code which exempt the sale of articles to Indians for use by Indians." The denial letter went on to state:

In your request you cite the following Code sections:

1. Section 4221 pertaining to state and local exemptions. The tribe is not and does not contend to be a state or political subdivision. Therefore, that section does not apply.

2. Section 4225 pertaining to articles. That section does not apply in this case since it pertains only to articles manufactured by Indians and not to other taxable articles manufactured by others for sale.

3. Section 4293 pertaining to articles purchased for the exclusive use of the United States. The Secretary of the Treasury has authorized an indefinite exemption for the United States Government from the tax only with respect to communication tax. The tribe admittedly is not an agency of the United States. Therefore, that section does not apply. In addition to the above, Revenue Ruling 58-610, 1958-2 CB 815 holds an Indian tribe or council does not come within the scope of the exemption from the manufacturer's excise tax. Also, in *Confederated Tribes of the Warm Springs Reservation of Oregon vs. Kurty*, 691 F.2d 878 (9th Cir.1982), the Indian tribe was not exempt from federal excise taxes.

The tribe was given thirty days to request a conference with the appeals office to discuss the "proposed denial."

On January 11, 1983, LCO made a timely appeal of the adverse decision and requested an oral conference. On January 17,

1983, LCO submitted a supplemental memorandum in support of its application for tax-free status. A conference between the parties was held in Milwaukee on April 25, 1983. By notice dated April 30, 1984, the tribe's appeal was denied by the associate chief of the Milwaukee Appeals Office, Midwest Region. The reason for disallowance stated in the notice provided that:

There are no provisions in the Internal Revenue Code which exempt the sale of articles to Indians for use by Indians. See Rev. Rule 58-610, 1958-2 C.B. 815; and *Confederated Tribes of the Warm Springs Reservation of Oregon vs. Kurtz*, 82-2 USTC 16,387.

The notice denying the appeal further stated that:

If you wish to bring suit or proceedings for the recovery of any tax, penalties or other moneys for which this disallowance notice is issued, you may do so by filing such a suit with the United States District Court having jurisdiction, or with the United States Court of Claims. The law permits you to do this within 2 years from the mailing date of this letter.

The present lawsuit was filed in this court on April 24, 1986.

### OPINION

The IRS has moved to dismiss this action for lack of standing. The argument advanced by the IRS in support of this motion is superficially simple: only a taxpayer can bring a refund suit; the tribe was not the taxpayer; therefore, the tribe has no standing to bring this refund action. In opposition, LCO argues that it should be considered to be the taxpayer in this case because the burden of the tax fell upon the tribe.

■ Jurisdiction over this action is alleged by the tribe to be present under 28 U.S.C. § 1346(a), which provides that the district courts have original jurisdiction of:

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collect-

ed without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

The only person entitled to bring a refund suit under § 1346(a)(1) is the taxpayer. *Busse v. United States*, 542 F.2d 421, 424 (7th Cir.1976); *Economy Plumbing & Heating Co., Inc. v. United States*, 200 Ct.Cl. 31, 470 F.2d 585, 589 (1972). "It follows logically that a nontaxpayer cannot overpay taxes and consequently there is no overpayment for him to claim by way of refund." *Economy Plumbing & Heating*, 470 F.2d at 590. Accordingly, LCO can maintain this suit for a refund of taxes only if it is a taxpayer of the applicable tax.

The tax in question is the manufacturer's excise tax on motor vehicles, 26 U.S.C. § 4061. Section 4061(a)(1) imposes "upon the following articles ... sold by the manufacturer, producer, or importer" a tax equal to a percentage of the sale price. Trucks are one of the articles subject to the tax. Treasury regulations promulgated to implement § 4061 provide that: "The tax imposed by section 4061(a) is payable by the manufacturer, producer, or importer making the sale." 26 C.F.R. § 48.4061(a)–1(c) (1986).

Courts have uniformly agreed that the taxpayer of a manufacturer's excise tax is the manufacturer, not the consumer.

> The tax is imposed upon the person who manufactures and sells the article, not on the customer or purchaser. The manufacturer is the only one who is required to make the return on this excise tax. No return is required of the purchaser.

*Martin's Auto Trimming, Inc. v. Riddell*, 283 F.2d 503, 505–06 (9th Cir.1960). *See also Ace-Chicago Great Dane Corp. v. United States*, 726 F.2d 321 (7th Cir.1984); *Dow Jones & Company v. United States*, 130 Ct.Cl. 696, 128 F.Supp. 748, 749–50 (1955).

In this case, the tribe does not appear to contest that the motor vehicle excise tax is imposed on the manufacturer or vendor, that Gunderson was the vendor, or that Gunderson was the actual taxpayer. The tribe's argument, rather, is predicated on its theory that although LCO was not the taxpayer in fact, it may be considered the taxpayer for purposes of a refund suit because the economic burden of the tax fell upon the tribe. The IRS, in turn, does not appear to contest that the economic burden of the manufacturer's excise tax collected in this case fell upon LCO. The facts bear this out: the manufacturer's excise tax was exempted expressly from the purchase price; after Gunderson paid the tax, it received the actual amount of the excise tax as a loan from LCO; and LCO is liable to Gunderson for the full amount of the loan if it is determined that the tax was valid. Instead, the IRS argues that where the economic burden of the tax falls is irrelevant because only the actual taxpayer can maintain a refund suit.

In support of its position that the economic burden of the tax is controlling, the tribe cites a number of United States Supreme Court cases addressing taxation of Indians. *See, e.g., McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973); *Moe v. Confederated Salish and Kootenai Tribes of the Flathead Reservation*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976). The tribe is correct in stating that these and other tax cases invalidated taxes imposed within reservation boundaries that burdened the tribe or its members and held valid those taxes that burdened non-Indians. *See, e.g., McClanahan* (state cannot tax Indian income derived solely from reservation sources); *Moe* and *Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980) (state cannot tax on-reservation sales of cigarettes by Indian retailers to Indians, but may tax such sales made to non-Indians and to non-members of the tribe); *Bryan v. Itasca County*, 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976) (state cannot tax personal property of an Indian that is located on trust lands within the reservation); *Ramah Navajo School Bd. v. Bureau of Revenue of New Mexico*, 458 U.S. 832, 102 S.Ct. 3394, 73 L.Ed.2d 1174 (1982) (state cannot impose gross receipts tax on non-Indian company constructing on-reservation school for Indian children).

All these cases, however, represent instances of *state*, not federal, taxation of Indians. The states have no power within reservation borders to tax tribes or their members absent a specific grant of authority from Congress. *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 764–65, 105 S.Ct. 2399, 2402–03, 85 L.Ed.2d 753 (1985). In determining whether any given state tax may be imposed, the courts employ a preemption analysis unique to Indian law. If the incidence of the tax within reservation borders falls upon the tribe or individual Indians, state taxes may be imposed only if Congress has authorized that imposition expressly. *Id.* at 765, 105 S.Ct. at 2403. Even if the legal incidence of the tax falls upon non-Indians, the Supreme Court has invalidated the state taxes consistently if the economic burden would ultimately fall upon the tribe, particularly where pervasive federal regulation of the subject exists. *See, e.g., Ramah Navajo School Bd.*, 458 U.S. at 844 n. 8, 102 S.Ct. at 3401–02 n. 8.

 The federal tax analysis is different. Because federal taxes cannot be preempted by federal law, there is no need to determine where the legal incidence or even the economic burden of the tax lies. The federal government, which asserts plenary power over Indian tribes, has the authority generally to impose its taxes even if the incidence falls upon the tribe. Thus, where a federal tax is applicable across the board, Indians and Indian tribes are subject to the tax unless an exemption can be found in a treaty or in another statute. *United States v. Anderson*, 625 F.2d 910, 913 (9th Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1367, 67 L.Ed.2d 347 (1981). Although statutes and treaties are to be construed in favor of the Indians, such favorable construction applies only if the statute or treaty contains language that reasonably can be construed to confer a federal tax exemption. *Id.* Here, LCO points to nothing that would override the federal power to tax, such as an express exemption, a treaty provision, or other federal statute from which an exemption could be implied. *See, e.g., Squire v. Capoeman*, 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883 (1956) (construing the General Allotment

Act to exempt from federal income tax Indian income derived from trust allotments). Thus, even if the economic burden of the manufacturer's excise tax does fall solely on the tribe, nonetheless the federal government possesses the authority to impose that tax.

The excise tax on motor vehicles is imposed upon and paid by the manufacturer or vendor. "He will, if possible, add the amount of the tax to the selling price, and thus pass on the economic burden of the tax to the purchaser. But the purchaser is not liable for the tax, and is not the taxpayer." *Dow Jones*, 128 F.Supp. at 749. That is precisely the situation in the present case. Gunderson recovered the amount of the excise tax from LCO, thus passing on the economic burden of the tax. That fact alone, however, is insufficient to make LCO the taxpayer. Gunderson remains the only taxpayer for purposes of the manufacturer's excise tax, and thus the only entity able to bring suit under 28 U.S.C. § 1346(a)(1) for a refund of taxes. The tribe is not the taxpayer, and has no standing to sue for a refund.

Although this result is mandated under federal tax law, it places the tribe in an anomalous situation. If in fact the tax was wrongfully assessed and LCO should be exempt from the manufacturer's excise tax, LCO has no avenue by which to seek court review of the IRS' adverse decision. The IRS concedes that the tribe could not appeal to a court the agency's denial of the tax exemption.

No federal statute confers a remedy upon the tribe. The Declaratory Judgment Act specifically prohibits such judgments "with respect to Federal taxes," except in certain bankruptcy proceedings or in actions brought under 26 U.S.C. § 7428. Section 7428 permits declaratory judgments only with respect to qualification or classification of an organization as tax-exempt under 26 U.S.C. § 501. Here, LCO is seeking exemption from a particular tax and thus would be barred from pursuing a declaratory judgment action.

 The Internal Revenue Code does permit certain civil actions by persons oth-

er than taxpayers for injunctive relief, recovery of property, and recovery of proceeds. 26 U.S.C. § 7426. However, § 7426(c) provides that:

> For purposes of an adjudication under this section, the assessment of tax upon which the interest or lien of the United States is based shall be conclusively presumed to be valid.

In the present action, LCO is challenging the validity of the manufacturer's excise tax assessed upon the sale of the trucks. Accordingly, even if the tribe otherwise met the conditions for suit under § 7426,[1] nonetheless it would be barred from the very relief it seeks.

■■■ It is possible that Gunderson could have maintained a refund action on behalf of the tribe. Since Gunderson is the taxpayer, it could have brought a refund suit if it established that it either had not included the tax in the sale price of the article or had repaid the amount of the tax to the purchaser. 26 U.S.C. § 6416(a)(1); *West v. United States*, 397 F.2d 381, 382 (7th Cir.1968). The purpose of this requirement is the prevention of unjust enrichment: only if the taxpayer can establish that it bore the actual burden of the tax can it sue for a refund. *Travel Industries of Kansas, Inc. v. United States*, 425 F.2d 1297, 1299 (10th Cir.1970). The IRS maintains that the only proper means by which LCO could have sought relief from the assessment was a refund suit by Gunderson. It is difficult to see what incentive Gunderson could have for doing so, since it will not be out any money in any case. Moreover, I am not convinced that, in a refund suit brought pursuant to § 6416, Gunderson would have standing to raise and litigate the issue of the tribe's alleged governmental exemption from the manufacturer's excise tax.[2] In any case, I would be wary of litigating an entity's tax standing in a lawsuit in which the entity could not even be joined as a party.

The Court of Claims has noted that whereas the Internal Revenue Code "makes careful provision that the manufacturer should not be unjustly enriched by obtaining a refund of a tax which he has passed on, [it] makes no provision for the obtaining of a refund by a purchaser who has borne the economic burden of the tax." *Dow Jones*, 128 F.Supp. at 750 (describing the statutory predecessor of § 6416). The outcome of this legal eccentricity could be that if the government wrongfully assesses a manufacturer's excise tax, and if the manufacturer or seller passes on the burden of the tax to the purchaser, the government is entitled to retain the tax money despite its wrongful assessment. I find it curious that a statute designed to prevent unjust enrichment to the taxpaying manufacturer may well result in unjust enrichment to the government.

Thus it appears that unless LCO could persuade Gunderson, by whatever moral or economic means, to bring the refund suit pursuant to the provisions of § 6416, there is no means by which LCO is able to challenge the IRS' denial of its request for a tax exemption. Although this lack of a remedy is disturbing, it would be more so if it appeared that the tribe had a reasonable likelihood of success on the merits of its challenge to the tax assessment. However, existing case law supports the IRS' denial of LCO's application.

The manufacturer's excise tax on motor vehicles is applicable to sales of all vehicles described in the statute. 26 U.S.C. § 4061. As I noted earlier, federal taxes of general applicability are applicable also to Indians unless there is a specific exemption or unless an exemption may be implied from a treaty or another federal statute. *Anderson*, 625 F.2d at 913. Also as I noted previously, LCO has pointed to no express exemption in favor of Indian tribes

---

1. It is unlikely in any case that the tribe could use § 7426, since that provision was intended to provide a remedy for third parties whose property or interest in property was harmed by a wrongful levy, see *Busse*, 542 F.2d 421, 425 (7th Cir.1976), not for third parties whose harm resulted from a wrongful assessment of taxes.

2. In other cases brought pursuant to § 6416, the challenge was to the assessment of the tax on a particular item, not the assessment of the tax in relation to a third party. *See, e.g., West v. United States*, 397 F.2d 381, 382 (7th Cir.1968); *Travel Industries of Kansas, Inc. v. United States*, 425 F.2d 1297, 1298 (10th Cir.1970).

and to no treaty provision or statute from which an exemption might be implied.

 The Court of Appeals for the Ninth Circuit recently addressed the applicability of the manufacturer's excise tax on motor vehicles to an Indian tribe, in *Confederated Tribes of the Warm Springs Reservation v. Kurtz*, 691 F.2d 878 (9th Cir.1982). In *Warm Springs*, the taxpayer was the tribe itself, which had assembled a truck chassis taxable under § 4061(a). In a persuasive opinion, the circuit court noted that the Internal Revenue Code contained no express exemption for the tribe, and that a tax exemption may be implied from a treaty or statute only if it contains "express exemptive language."[3] *Id.* at 881, citing *Anderson*, 625 F.2d at 913. Finding no express exemptive language in the tribe's treaty or in the federal regulatory scheme for tribal resources, the court of appeals held the tribe subject to the federal tax. *Id.* at 882–83.

The Indian Tribal Governmental Tax Status Act, 26 U.S.C. § 7871, and its legislative history support the *Warm Springs* decision. In relevant part, the Tax Status Act provides that an "Indian tribal government shall be treated as a State ... for purposes of any exemption from ... an excise tax imposed by ... chapter 32 (relating to manufacturers excise taxes)." 26 U.S.C. § 7871(a)(2)(B). This provision of the Tax Status Act took effect on January 1, 1983. Pub.L. 97–473, § 204, as amended by Pub.L. 98–369, Title X, § 1065(a), 98 Stat. 1048 (1984). Under the Act, an Indian tribe that purchased motor vehicles subject to the manufacturer's excise tax after January 1, 1983, would receive the same tax exemption previously extended to states.[4]

The legislative history of the Tax Status Act establishes that Congress intended to extend the previous state exemption to Indian tribes, and was not merely correcting

the statutory language to accord with its understanding of the current tax law. S.Rep. No. 646, 97th Cong., 2d Sess., *reprinted in* 1982 U.S.Code Cong. & Ad. News 4580. The Senate report notes that exemptions available to state governments "generally are unavailable" to tribal governments, and that the Act seeks to provide tribes with a tax status "similar to what is now provided" for state governments. *Id.* at 10–11, U.S.Code Cong. & Ad.News at 4588–89. The legislative history speaks throughout of "extending" certain tax provisions to tribal governments. *Id.* at 2, U.S.Code Cong. & Ad.News at 4581. *See also* Williams, *Small Steps on the Long Road to Self-Sufficiency for Indian Nations: The Indian Tribal Governmental Tax Status Act of 1982*, 22 Harv.J. on Legis. 335, 374–75 (1985).

The *Warm Springs* decision of the Ninth Circuit, the revenue ruling from the IRS, and the legislative history of the Tax Status Act are persuasive evidence that even if I were able to find a basis for standing for LCO in this case, the tribe would have little likelihood of prevailing on the merits of its challenge to the manufacturer's excise tax.

I conclude that the Lac Courte Oreilles Band has no standing to bring this civil action for a refund of federal excise taxes. Therefore, IT IS ORDERED that this action is DISMISSED for lack of subject matter jurisdiction.

---

**3.** In 1958, the IRS issued a ruling that an Indian tribe that purchased an automobile for police purposes was subject to the manufacturer's excise tax. Rev.Rul. 58–610, 1958–2 C.B. 815. Looking only to the Internal Revenue Code and the express exemptions from the manufacturer's excise tax contained within the Code, the IRS found that the tribal purchase was subject to the tax. *Id.* at 816. Although revenue rulings do

not have the force of law, they may be persuasive authority. *Warm Springs,* 691 F.2d at 881 n. 2.

**4.** As an additional requirement for a tribal exemption, the transaction must involve "the exercise of an essential governmental function of the Indian tribal government." 26 U.S.C. § 7871(b).