**LAC COURTE OREILLES BAND OF LAKE SUPERIOR CHIPPEWA INDIANS, Plaintiff–Appellant,**

v.

**UNITED STATES INTERNAL REVENUE SERVICE, Defendant–Appellee.**

No. 87–2027.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 21, 1988.

Decided April 15, 1988.

Larry B. Leventhal, Larry Leventhal & Associates, Minneapolis, Minn., for plaintiff-appellant.

William S. Rose and Douglas G. Coulter, Appellate Sec., Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before CUMMINGS and WOOD, Circuit Judges, and WILL, Senior District Judge.[*]

CUMMINGS, Circuit Judge.

The Lac Courte Oreilles Band of Lake Superior Chippewa Indians (LCO) sought the refund of $14,334.56 of federal manufacturer's excise taxes levied on the purchase of three large earth-moving trucks by the LCO Development Corporation, an instrument chartered by the tribal government. 28 U.S.C. § 1346(a); 26 U.S.C.A. § 4061. The United States Internal Revenue Service (IRS) moved to dismiss LCO's suit due to a lack of subject matter jurisdiction, claiming that because LCO was not the nominal taxpayer, the tribe had no standing to sue. Fed.R.Civ.P. 12(b)(1). LCO responded that its standing to bring a taxpayer action stemmed from its actually suffering the economic burden of the tax imposed on the trucks' vendor, Gunderson Chevrolet. Basing its decision on persuasive precedent, past revenue rulings by the IRS, and the legislative history of the pertinent congressional enactments, the district court dismissed the action. 658 F.Supp. 1434 (W.D.Wis.1987). While we note the unfortunate harshness of a ruling which places the tribe in the anomalous position of having no remedy to redress its alleged grievance, this Court affirms for the reasons that follow.

I

The undisputed facts on appeal reveal the following: LCO, an American Indian

---

[*] The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

tribe located in northern Wisconsin, has a tribal government organized under the Indian Reorganization Act of 1934, 25 U.S.C. § 461 *et seq.* LCO's self-government powers through its Development Corporation include establishing both tribal housing and business on its reservation. When the corporation acts as an instrumentality of the LCO's government, it enjoys the same tax status as the tribe.

This case commenced in March of 1981, when LCO applied to the IRS on behalf of itself and the LCO Development Corporation for registration that sales to them were exempt from the federal manufacturer's excise taxes under 26 U.S.C. § 4061(a)(1). LCO Development Corporation had purchased three trucks from Gunderson Chevrolet, a dealer in Osseo, Wisconsin, in February, May, and October 1981. These trucks were used to improve, maintain, and repair both the buildings and grounds on the reservation. LCO and Gunderson negotiated the purchase price of each truck prior to delivery. This price did not include the federal manufacturer's excise taxes because LCO had claimed that it was exempt from these taxes. The total tax on the three trucks was $14,334.56.

On August 17, 1982, Gunderson demanded payment of the additional $14,334.56 because LCO could not provide an excise tax exemption number. Counsel for LCO on October 26, 1982, wrote to the IRS claiming that LCO qualified for exemption as a state or local government under 26 U.S.C. § 4221(a)(1). Subsequently, on November 18, 1982, LCO loaned Gunderson the $14,334.56, the dealer agreeing if the tribe was determined not to be exempt, to repay the loan within thirty days thereafter. The tribe would then pay Gunderson the full amount within five days of his repayment of the loan. Gunderson then paid the tax to the government.

On December 17, 1982, the IRS denied LCO's March 1981 application for tax-free status and gave the tribe thirty days to request a conference regarding the denial. LCO appealed this decision on January 11, 1983, and both parties then conferred in Milwaukee on April 25, 1983. Approximately one year later, on April 30, 1984, the Appeals Office of the IRS rejected LCO's claimed exemption. The notice denying the appeal further directed LCO to file suit for its claim within two years. LCO filed this suit on April 24, 1986.

In granting the government's motion to dismiss for lack of subject matter jurisdiction, the district court held that since LCO was not the person required to pay the federal manufacturer's excise taxes, it had no standing to sue for a refund under 26 U.S.C. § 7422. The court went on further to note that because LCO had provided no authority to support its claimed exemption from excise taxes, it "would have little likelihood of prevailing on the merits." 658 F.Supp. at 1440.

## II

At issue is whether the district court correctly dismissed LCO's refund suit. In a somewhat rambling fashion, LCO raises various arguments on appeal. Many of the specific contentions advanced by LCO were not raised before the district court and hence were waived. *Dunker v. Reichman,* 841 F.2d 177, 180 n. 3 (7th Cir. March 2, 1988). We concern our review with first, LCO's standing to sue, second, LCO's alleged exemption from federal excise taxes, and finally, LCO's joinder and due process assertions.

### A. *Taxpayer Standing*

We first examine the district court's grant of IRS' motion to dismiss for lack of subject matter jurisdiction. The court below considered as true all of LCO's factual allegations, *Walls v. United States,* 832 F.2d 93 (7th Cir.1987), as well as looked beyond the jurisdictional allegations in the complaint. *Roman v. United States Postal Service,* 821 F.2d 382 (7th Cir.1987). Jurisdiction in this case was premised on 28 U.S.C. § 1346(a), which provides for civil actions to refund erroneously assessed or wrongly collected federal taxes. LCO had the burden below to demonstrate that it complied with the statute in seeking a refund. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058;

*Schon v. United States,* 759 F.2d 614, 617 (7th Cir.1985). This Court strictly construes this compliance as a jurisdictional prerequisite for bringing refund suits. See, *e.g., Martin v. United States,* 833 F.2d 655 (7th Cir.1987) (insufficient notice to IRS). The district court ultimately concluded that this burden was not met.

■ The main determination for this Court, as for the court below, is whether LCO should be considered the taxpayer in this suit. LCO's position is that the economic burden of the tax controls who the taxpayer is, while IRS responds that because Gunderson was the sole party to pay the federal manufacturer's excise tax, the tribe was not the taxpayer and hence had no standing to bring this refund action.

This Court has recognized that only the person legally liable for paying a given federal tax may bring a refund suit under Section 1346(a)(1). *Busse v. United States,* 542 F.2d 421, 424 (7th Cir.1976). The plaintiff in *Busse* paid a federal tax to remove a property encumbrance, yet had no duty to pay such a tax. We held there that only persons legally liable for taxes may prosecute refund claims. *Id.* at 424. This result followed the basic logic that a "nontaxpayer cannot overpay taxes." See *Economy Plumbing & Heating v. United States,* 470 F.2d 585, 589 (Ct.Cl.1972).

LCO seeks a refund of the money it paid Gunderson to enable the vendor to pay the manufacturer's excise tax on the three trucks it sold LCO pursuant to their prearranged "deal." Section 4061 of the Code, as in effect during 1981 when the trucks were sold, imposed an excise tax of ten percent of the sales price on the trucks. This tax was levied on the manufacturer, and accordingly was payable only by the manufacturer making the sale. 26 C.F.R. § 48–4061(a)–1(c) (1986). Because "[t]he manufacturer is the only one required to make the return on this excise tax ... [and] no return is required of the purchaser," *Martin's Auto Trimming, Inc. v. Riddell,* 283 F.2d 503, 505–506 (9th Cir.1960), the manufacturer, not the consumer, is designated as the actual taxpayer of the manufacturer's excise tax.

LCO attempts to counter the above procedures by relying on general principles of Indian law. Those cases involving state taxation of Indians were distinguished below, 658 F.Supp. at 1437–1438; we need not reiterate those arguments here. Furthermore, the "special status of Indian tribes" and the broad trust responsibility of the government toward the tribes fail to except LCO from the general rule that it is the taxpayer who has standing to sue. While "the trust relationship is one of the primary cornerstones of Indian law," Ball, *Constitution, Court, Indian Tribes,* 1987 A.B.F. Res.J. 3, 61, and this "special relationship between the Indian tribes and the Federal government ... continues to carry immense moral and legal force," 116 Cong. Rec. 23,131, 23,132 (1970) (President Nixon's speech to Congress); see also Note, *Rethinking the Trust Doctrine in Federal Indian Law,* 98 Harv.L.Rev. 422 (1984), the most liberal construction of the refund statute at issue cannot confer standing to sue for a federal tax exemption on LCO. Cf. *Squire v. Capoeman,* 351 U.S. 1 (General Allotment Act held to exempt from tax income derived from Indian trust allotments).

### B. *Tax Exemptions*

■ Under Section 4221(a)(4) of the Internal Revenue Code, a sale by a manufacturer of any article subject to the federal manufacturer's excise tax is exempt if that sale is made to a state or local government for "the exclusive use" of that government. 26 U.S.C. § 4221(a)(4) (1982). "The term 'State or local government' means any State, any political subdivision thereof, or the District of Columbia." 26 U.S.C. § 4221(d)(4). Where the tax has been prepaid by the state or subdivision, Subtitle F of the Code provides for a credit or refund of the manufacturer's excise tax. The Indian Tribal Government Tax Status Act of 1982 extended this manufacturer's excise tax exemption to tribal governments and their subdivisions. 26 U.S.C. § 7871(a)(2)(B), (b) (1982 & Supp. I 1983). This provision expressly overruled an Internal Revenue Service ruling which held that

Indian tribes were not state or local governments and that sales to Indian tribes were therefore not exempt from the manufacturer's tax under the Code. Rev.Rul. 58–610, 1958–2 C.B. 815.

From January 1, 1983, the effective date of the Indian Tribal Government Tax Status Act, all purchases in the exercise of an essential government function by a tribal government previously subject to the federal manufacturer's excise tax were now exempt. A tribe purchasing equipment needed for the provision of governmental services, such as heavy earth-moving trucks, could then realize the same dollar savings on such purchases as state and local governments previously could. This suit, however, was brought before the effective date of the Act. Therefore it is necessary to examine whether Congress intended to apply the federal excise taxes to tribal governments before the recent Act.

The IRS has consistently ruled that Congress did not intend to impose the federal income tax on tribes. See generally *F. Cohen's Handbook of Federal Indian Law* 231 (3d ed. 1982). But tribes as employers basically have been subject to federal insurance contributions tax, 26 U.S.C. §§ 3101–26, unemployment compensation tax, *id.* at §§ 3301–11, and income tax withholding, *id.* at §§ 3401–06; see *Choteau v. Burnet*, 283 U.S. 691, 51 S.Ct. 598, 75 L.Ed. 1353 (1931). The similar reasoning which underlies the income tax exemption, however, could apply to federal manufacturer's excise taxes, at least where the taxes are not imposed on other governmental units. In fact, as noted previously, the excise tax statutes often exempt state and local governments. Application of these laws to tribes, however, generates conflicting arguments. On the one hand, a literal reading would hold the taxes applicable because tribes are not expressly exempt. Conversely, the tribes could be held exempt by proceeding from the historical practice of Congress not to tax tribes, even though the Supreme Court has never held a federal tax applied to Indians to be unconstitutional. See, *e.g.*, *The Cherokee Tobacco*, 78 U.S. (11 Wall.) 616, 20 L.Ed. 227 (1870) (tax on Indian tobacco). The exemptions for other units of government would appear to negate a uniform national purpose respecting those laws. Moreover, as earlier stated, the IRS did rule against an exemption from the manufacturer's excise tax on automobiles sold to a tribe for police use when the party liable for the tax was the seller. Rev.Rul. 58–610, 1958–2 C.B. 815, 816 (interpreting 26 U.S.C. § 4061(a)). Such a revenue ruling is to be considered persuasive authority. *Gehl Co. v. CIR*, 795 F.2d 1324 (7th Cir.1986).

Even if the excise taxes generally are considered validly imposed, a further issue exists respecting tribal activities directly connected with the productive use of tribal land. The land has long been assumed to be tax-exempt as an aspect of the purpose of treaties and laws setting it aside for tribal use. *The Kansas Indians*, 72 U.S. (5 Wall.) 737, 18 L.Ed. 667 (1866) (tribes totally immune from state taxation); *United States v. Board of Comm'rs*, 145 F.2d 329 (10th Cir.1944), certiorari denied, 323 U.S. 804, 65 S.Ct. 563, 89 L.Ed. 641. Analogous reasoning to the allotment cases could exempt from tax tribal activities making use of that land. *Squire v. Capoeman*, 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883; see also Williams, *Small Steps on the Long Road to Self–Sufficiency for Indian Nations: The Indian Tribal Governmental Tax Status Act of 1982*, 22 Harv.J. on Legis. 335, 374–375 (1985). This could include the use of trucks to develop reservation buildings and grounds.

This identical argument, however, was addressed by the United States Court of Appeals for the Ninth Circuit in *Confederated Tribes of the Warm Springs Reservation v. Kurtz*, 691 F.2d 878 (9th Cir.1982), which rejected the tribe's assertion that it should be exempt from the federal manufacturer's excise tax on motor vehicles. The tribe essentially claimed that it should be treated as a state or local government. But the tax code at that time—as during the period of this case—"unambiguously restrict[ed] the benefit of the disputed exemption to states, political subdivisions of states, and the District of Columbia." 691 F.2d at 881. The tribe accordingly was not

exempt; a similar rationale governs our analysis, for the plain language of the statute rules absent any contrary indications of Congress' intentions, *Blinzinger v. Lyng,* 834 F.2d 618 (7th Cir.1987), evidence of which is not present here.

Moreover, as noted by the district court, the Indian Tribal Governmental Tax Status Act was passed to provide tribes with the tax status similar to what was then provided to state and local governments. These excise tax provisions were to apply to events occurring on or after January 1, 1983. S.Rep. No. 97–646, 97th Cong., 2d Sess. at 15–17, U.S.Code Cong. & Admin. News 1982, p. 4580, 1983–1 Cum.Bull. 510, 521–523. The tax exemptions would thereafter be extended to tribes. But because this Act was not in effect during 1981 when LCO purchased the trucks from Gunderson, LCO may not rely on it.

### C. *Joinder and Due Process Claims*

The tribe asserts that Gunderson should have been joined as a party. An initial hurdle to this claim is Section 7426(c) of the Code, which, while allowing for injunctive relief by third parties whose interest in property was harmed by an erroneous levy, requires that "the assessment of tax ... shall be conclusively presumed to be valid." 26 U.S.C. § 7426(c). LCO's challenge to the validity of the manufacturer's tax assessed on its purchase of trucks—its basic assertion on appeal—precludes this claim. That Gunderson failed to file any claim for refund of the taxes under Section 7422 further demonstrates that LCO may not raise the joinder argument.

■ LCO's final contention involves an alleged denial of due process which supposedly should estop the government here. LCO maintains that it was improperly deprived of its right to be heard on the status of its tax exemption. Yet LCO was not the taxpayer and it failed to have Gunderson pursue a refund suit. Gunderson's decision not to seek a refund cannot be a deprivation of LCO's right to due process. *LaSalle Rolling Mills v. United States,* 832 F.2d 390 (7th Cir.1987).

Furthermore, estoppel against the government is an inappropriate argument in this case. LCO attempts to use the April 30, 1984, exemption denial to demonstrate that the IRS treated its appeal as a claim for refund. But LCO initiated the administrative process by seeking an exemption for the excise taxes levied on the trucks. LCO simply cannot show why Gunderson's failure to pursue a refund claim resulted from the denial. LCO thus does not meet its requisite "heavy" burden to demonstrate a possible estoppel. *Heckler v. Community Health Service,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42.

### III

The Lac Courte Oreilles Band does not have standing to sue for a refund of the federal manufacturer's excise taxes paid by Gunderson for the sale of the three trucks. Even if the tribe had standing, all evidence points to the conclusion that the tribe would not be exempt. Therefore, this Court approves of the dismissal for lack of subject matter jurisdiction.

The district court's judgment is affirmed.